**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMEL BROCKINGTON,** | : | Civil No. 3:12-CV-482 |
| | : | |
| Plaintiff | : | **(Judge Mariani)** |
| | : | |
| v. | : | **(Magistrate Judge Carlson)** |
| | : | |
| **C.O. WISHENFSKY, et al.,** | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM OPINION AND ORDER**

**I.   Statement of Facts and of the Case**

This is a *pro se* civil rights action brought an inmate in the custody of the Pennsylvania Department of Corrections.  This lawsuit began on March 16, 2012, when the plaintiff, Jamel Brockington, a state inmate, filed a *pro se* complaint, alleging, *inter alia*, that the defendant, Correctional Officer Wishenfsky, had used excessive force against him on January 29, 2012, when Officer Wishenfsky allegedly slammed a cell door food slot wicket shut on Brockington's arm. (Doc. 1.) Brockington has also alleged that Wishenfsky took these actions, and filed misconduct reports against the plaintiff, in retaliation for grievances lodged by Brockington in the past. (Id.)

This case now comes before the court for resolution of a discovery dispute. Specifically, Brockington has filed a motion to compel (Doc. 73.), which seeks three categories of records: (1) a disciplinary report relating to another prisoner, who may be a witness for the plaintiff; (2) all investigative records pertaining to the incident involving Brockington and Officer Wishenfsky on January 29, 2012; and (3) copies of grievances filed by Brockington relating to this incident. (Id.)

The defendant has responded to this discovery request, indicating that they have provided the plaintiff with copies of Brockington's grievances, and a number of pertinent documents relating to this January 29, 2012 incident. The defendant, however, resists producing additional investigative records regarding the January 29, 2012 episode or a grievance written by another inmate. (Doc. 76.)

Upon consideration of the motion to compel, the motion will be denied, in part, and granted, in part, as follows: The motion is denied with one exception. The defendant will be directed to produce for *in camera* inspection any previously non-disclosed investigative reports relating to the January 29, 2012 episode, so the court may assess their relevance and any claims of privilege relating to these documents.

## II. <u>Discussion</u>

Several basic guiding principles inform our resolution of the instant discovery dispute. At the outset, Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery, and provides that:

> (a) Motion for an Order Compelling Disclosure or Discovery
>
> (1) In General. On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. . . .

Fed. R. Civ. P. 37(a).

The scope of what type of discovery may be compelled under Rule 37 is defined, in turn, by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides as follows:

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)( C ).

Fed. R. Civ. P. 26(b)(1)

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment. Thus, it has long been held that decisions regarding Rule 37 motions are "committed to the sound discretion of the district court." <u>DiGregorio v. First Rediscount Corp.</u>, 506 F.2d 781, 788 (3d Cir. 1974). Similarly, issues relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the Court. <u>Wisniewski v. Johns-Manville Corp.</u>, 812 F.2d 81, 90 (3d Cir. 1987). Thus, a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion. <u>Marroquin-Manriquez v. I.N.S.</u>, 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. <u>See</u> <u>Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc.</u>, 174 F.R.D. 572, 585 (D.N.J.1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." <u>Saldi v. Paul Revere Life Ins. Co.</u>, 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing <u>Scott Paper Co. v. United States</u>, 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." <u>Kresefky v. Panasonic Commc'ns and Sys. Co.</u>, 169 F.R.D. 54, 64 (D.N.J.1996); <u>see also</u> <u>Hasbrouck v. BankAmerica Hous. Servs.</u>, 190 F.R.D. 42, 44-45 (N.D.N.Y.1999)

> (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion is guided, however, by certain basic principles. Thus, at the outset, it is clear that Rule 26's broad definition of that which can be obtained through discovery reaches only "nonprivileged matter that is relevant to any party's claim or defense." Therefore, valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all "relevant information" a concept which is defined in the following terms: "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

A party moving to compel discovery bears the initial burden of proving the relevance of the requested information. Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D.Pa. 2001). Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the

potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D.Kan. 2009).

Furthermore, in a prison setting, inmate requests for information relating to security procedures can raise security concerns, and implicate a legitimate governmental privilege, a governmental privilege which acknowledges a governmental needs to confidentiality of certain data but recognizes that courts must balance the confidentiality of governmental files against the rights of a civil rights litigant by considering:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intra-departmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiffs case.

Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D. Pa. 1973).

In addition, once the defendants have responded to a motion, advising the court that they have complied with all outstanding discovery requests, the mootness doctrine recognizes a fundamental truth in litigation: "[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698-99 (3d Cir. 1996).

With these legal guideposts in mind, we turn to consideration of Brockington's various discovery requests.

First, we note that the defendants have agreed to provide Brockington with his own prison grievances. This agreement by defendants satisfies this particular discovery request. In light of this agreement, this particular request is now moot.

As for Brockington's request for access to prison disciplinary records of another inmate and prison investigative records, we note first that the request for disclosure of a third party's grievance would violate the privacy rights of that third parties. See Mincy v. Chmielewski, No. 05-292, 2006 WL 3042968 (M.D.Pa. Oct. 25, 2006)(denying access to third-party complaints on privacy grounds). Likewise, we understand the need to keep some prison investigative records confidential. We note that the defendants have objected to the release of certain unidentified

investigative records citing the substantial security concerns, and staff safety issues, which may arise in this setting if these records were to be released. We find this response persuasive, in part, and, therefore, will decline to authorize wholesale disclosure of these documents on the grounds that such disclosure may gravely impair institutional security. See e.g., Banks v. Beard, 3:CV-10-1480, 2013 WL 3773837 (M.D. Pa. July 17, 2013); Mearin v. Folino, CIV.A. 11-571, 2012 WL 4378184 (W.D. Pa. Sept. 24, 2012). However, consistent with prior case law and acting out of an abundance of caution, we will direct a narrowly tailored *in camera* review of certain records. See, Victor v. Lawler, 3:08-CV-1374, 2011 WL 1884616 (M.D. Pa. May 18, 2011) reconsideration denied, 3:08-CV-1374, 2011 WL 3664741 (M.D. Pa. Aug. 19, 2011) and on reconsideration, 3:08-CV-1374, 2011 WL 4753527 (M.D. Pa. Oct. 7, 2011). Specifically, the defendants shall provide to the court, for its *in camera* inspection, the investigative documents in their possession regarding this incident that have not been released to the plaintiff so the court may determine whether these records, on their face, contain evidence relevant to Brockington's claims in this litigation.

AND NOW, this 31st day of March, 2015, the plaintiff's motion to compel is DENIED, in part, and GRANTED, in part, as follows:

On or before **April 17, 2015**, we direct the defendants to provide to the Court for its *in camera* inspection the investigative documents in their possession regarding this incident that have not been released to the plaintiff.  Armed with this information the Court can determine:  (1) whether this information is relevant to the issues raised in this case; (2) whether it is subject to any valid claim of privilege recognized by the Federal Rules; and (3) to what extent, in what format, and under what conditions it may be released to the plaintiff.

In all respects, the motion to compel, (Doc. 73.), is DENIED.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge